UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLY REDFEARN,

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil No. 07-1377-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Shelly Redfearn requests judicial review of a final decision by the Commissioner of the Social Security Administration (SSA) that concluded that she was ineligible for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). Plaintiff alleges disability since 2001 due to a mental impairment, asthma, and side effects from

1 - OPINION AND ORDER

medication use. Tr. 86, 243-44.[1]  She seeks judicial review and an order reversing the Commissioner's decision and remanding this case for an award of benefits.

**BACKGROUND**

Plaintiff was twenty-nine years old when she allegedly became disabled, and was thirty-four years old in July 2006 when the Administrative Law Judge (ALJ) in this action issued a written ruling that concluded that she was not entitled to disability benefits.  At the ALJ's hearing, plaintiff's attorney asserted that plaintiff's claim is based upon allegations of non-exertional limitations and not physical incapacity.  Tr. 638.  Testimony from plaintiff and her spouse addressed plaintiff's past work and daily activities.  Tr. 640-71.

Plaintiff alleged that she qualified for disability benefits based upon her cognitive, mental, psychological, and emotional disorders.  Evidence presented in support of these allegations included records from Dr. Rory Richardson, a clinical psychologist and neuropsychologist who has examined and treated plaintiff since 2001.

Doctor Richardson tested plaintiff's IQ in June 2001 on behalf of the state disability agency and determined that her full-scale IQ score was 65.  Tr. 548.  Doctor Richardson concluded at that time that plaintiff suffered from dementia secondary to head trauma, not mental retardation.  Tr. 551.  His diagnoses included major depression (single episode, moderate), post-traumatic stress disorder, and panic attacks without agoraphobia.  *Id*.

On August 17, 2002, Dr. Richardson evaluated plaintiff again, also on behalf of the state disability agency.  Tr. 552.  Plaintiff's full-scale IQ score was 61.  The doctor's diagnoses were

---

1   Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2  - OPINION AND ORDER

psychotic disorder (not otherwise specified), dementia secondary to head trauma (provisional), major depression (recurrent, moderate), and panic attacks with agoraphobia. Tr. 556.

Doctor Richardson began providing psychotherapy to plaintiff in 2003. Tr. 563. During this treatment, plaintiff scored 64 on full-scale IQ testing. Tr. 559. During her treatment in 2003, plaintiff reported to Dr. Richardson that she was struck in her head with a baseball bat when she was three or four years old. *Id*. Subsequent to this report from plaintiff, Dr. Richardson diagnosed mental retardation, post-traumatic stress disorder, dementia secondary to head trauma, and mood disorder (NOS). Tr. 561. Plaintiff continued to receive individualized psychotherapy from Dr. Richardson during 2003. Tr. 565-71.

In early 2004, Dr. Howard Johnson, a non-examining agency consultant, reviewed plaintiff's medical records and concluded she could occasionally climb ladders or scaffolds, and should avoid concentrated exposure to fumes, gases, dusts, odors and poor ventilation. Tr. 584, 588. There is no dispute about the applicability of these limitations.

In late 2004, Dr. Richardson completed a Psychiatric Review Technique Form regarding plaintiff. He concluded that plaintiff suffered from:

\*   memory impairment and "Emotional lability and impairment in impulse control" among the criteria in Listing 12.02 (Organic Mental Disorders);

\*   a depressive syndrome under Listing 12.04 (Affective Disorders) as characterized by anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and thoughts of suicide;

3  - OPINION AND ORDER

\*   "[s]ignificantly subaverage general intellectual functioning" as indicated by a full-scale IQ score falling between 60 and 70;

\*   an anxiety disorder under Listing 12.06 as evidenced by generalized persistent anxiety accompanied by autonomic hyperactivity, apprehensive expectation, and vigilance and scanning; persistent irrational fear; recurrent severe panic attacks; recurrent obsessions or compulsions which are a source of marked stress; and

\*   personality disorders under Listing 12.08, as exhibited by persistent disturbances of mood or affect and intense and unstable interpersonal relationships and impulsive and damaging behavior.

Tr. 594-99.

Doctor Richardson found plaintiff to be markedly limited in daily living activities, maintaining social functioning, and in concentration, persistence or pace. Tr. 600.

On March 17, 2006, Dr. Ronald Duvall conducted a psychodiagnostic evaluation of plaintiff on behalf the state disability agency. Tr. 601. He diagnosed plaintiff with malingering, somatization disorder, and borderline personality disorder, and expressed doubt about the veracity of plaintiff's prior intelligence testing. Tr. 606-07. Doctor Duvall opined that "all results from the current psychological evaluation" were questionable because the results of testing could "only mean that [plaintiff] was making a deliberate attempt to make her memory appear deficient." Tr. 607. The doctor asserted that "the possibility of any other explanation for these scores is practically nonexistent." *Id*. Plaintiff's profile "almost exactly matched" what is referred to as a "bad fake" profile. *Id*. Doctor Duvall concluded that plaintiff was "willing to exaggerate, fake or lie when presenting her problems to health professionals" because with her

4   - OPINION AND ORDER

personality disorder, she has a strong feeling of entitlement to disability payments. Tr. 608. The doctor opined that plaintiff "should be able to attend, concentrate, learn and recall work procedures in work appropriate to her abilities." *Id*.

Three weeks later, Dr. Duvall completed a Medical Source Statement regarding plaintiff on behalf of the SSA. Tr. 610-13. He concluded that plaintiff had no limitations in understanding, remembering and carrying out short, simple instructions and in making judgments on simple work-related decisions, and was slightly limited in understanding, remembering and carrying out detailed instructions. Tr. 611. Because of plaintiff's borderline personality disorder and "somatic preoccupation," Dr. Duvall opined that plaintiff was "moderately" restricted in interacting appropriately with the public, supervisors, co-workers and responding appropriately to typical work pressures or changes in work routines. Tr. 612. For purposes of this Statement, "moderate restrictions" were defined as moderate limitations under which the individual is still able to function satisfactorily. Tr. 611.

At the hearing, the ALJ elicited expert testimony from a vocational expert (VE). Tr. 671-77. The VE testified in part that if a person "has a moderate disability in interacting with supervisors, [he or she is] going to have a very difficult time sustaining employment." Tr. 673.

This court will address other details of plaintiff's medical history as necessary in this ruling.

## **STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable

physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as

one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted). A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton*, 331 F.3d at 1035.

## SUMMARY OF THE ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since her alleged disability onset date. Tr. 37.

At step two, the ALJ found that plaintiff had the following severe impairments: malingering/somatoform disorder and borderline personality disorder. Tr. 37.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 37. The ALJ determined plaintiff's RFC to present no exertional limitations, but that plaintiff should avoid concentrated exposure to fumes, dusts and gases. Tr. 35. She is limited to routine, repetitive type work requiring no interaction with the general public and should be assigned to work tasks that she can complete alone and not as part of a team. *Id*. Plaintiff does not, however, require special supervision. *Id*.

At step four, the ALJ determined that plaintiff could not perform her past relevant work. Tr. 37.

At step five, after eliciting testimony from the VE, the ALJ determined that plaintiff could perform other work that exists in significant numbers in the national economy, including work as a circuit board assembler, electronics worker, small products assembler, bench parts assembler and grocery bagger.  Tr. 35-37.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits.  Specifically, plaintiff argues that (1) the ALJ ignored Dr. Duvall's opinion that plaintiff is moderately limited in interacting with the public and with supervisors; and (2) the severity of plaintiff's impairments meet or equal Listing 12.05 for mental retardation.

## DISCUSSION

### 1.     The ALJ's evaluation of Dr. Duvall's opinion was proper

Plaintiff first argues that the ALJ improperly ignored a critical aspect of Dr. Duvall's medical opinions.  As noted above, Dr. Duvall indicated that plaintiff was moderately limited (but could still function successfully) while interacting with the public, supervisors, co-workers and responding to typical work pressures or changes in work routines.  Tr. 612.  Because the VE testified that a person who has a moderate disability in interacting with supervisors "is going to have a very difficult time sustaining employment," Tr. 673, plaintiff argues that the ALJ's ultimate conclusion that plaintiff could sustain employment cannot be reconciled with the ALJ's adoption of Dr. Duvall's opinions.  Plaintiff argues that the ALJ's decision to deny benefits must

be construed as improperly rejecting Dr. Duvall's findings regarding plaintiff's moderate limitations. This court disagrees.

The ALJ gave legally sufficient reasons, supported by substantial evidence, for relying upon the opinions of Dr. Duvall. Contrary to plaintiff's assertions, the ALJ incorporated all of Dr. Duvall's opinions, including his belief that plaintiff is moderately restricted in interacting appropriately with the public, supervisors, co-workers and responding appropriately to typical work pressures or changes in work routines. That opinion must be considered in the context in which it was rendered. First, on the form in which Dr. Duvall expressed this opinion, moderate limitations are defined as allowing an individual to function satisfactorily. Tr. 611. Second, the opinion was accompanied by Dr. Duvall's unequivocal conclusions that plaintiff's profile "almost exactly matched" a "bad fake" profile and that she was "willing to exaggerate, fake or lie when presenting her problems to health professionals" and "should be able to attend, concentrate, learn and recall work procedures in work appropriate to her abilities." Tr. 607-08.

The VE's general observation that a person with a "moderate disability" in interacting with supervisors will find sustaining employment "very difficult" was offered after the ALJ presented exhibits to the VE (presumably including Dr. Duvall's Medical Source Statement), but before the ALJ presented a hypothetical question that incorporated a fair interpretation of Dr. Duvall's opinion regarding plaintiff's moderate limitations. Tr. 673. The ALJ properly incorporated that aspect of Dr. Duvall's opinions in asking the VE to consider the employment prospects of an individual who was limited to routine, repetitive work with no public contact and who would preferably work alone. The VE opined that a person with such limitations could

10 - OPINION AND ORDER

perform the job functions of an electronics worker, a production assembler, or a circuit board assembler. Tr. 675.

Subsequently, plaintiff's counsel redirected the VE to the aspect of Dr. Duvall's opinions that pertained to plaintiff's moderate limitations in interacting appropriately with supervisors and coworkers. Tr. 676. In response, the VE reiterated that an individual worker who is "moderately impaired at interacting with coworkers and responding appropriately to work pressures on a consistent basis" would find sustaining competitive employment difficult. *Id*.

Plaintiff's current counsel urges the court to declare plaintiff eligible for disability payments on the basis of the VE's opinion that a person who is moderately impaired in interacting with coworkers would find sustaining employment difficult. This is rejected.

The ALJ considered all of the medical evidence presented in this case. That evidence was used as a basis to formulate a hypothetical question to the VE. That question did not *ignore* any aspect of Dr. Duvall's opinions, but rather interpreted those opinions. Essentially, plaintiff challenges the scope of the hypothetical question and the ALJ's interpretation of the aspect of Dr. Duvall's Medical Source Statement that indicated that plaintiff was moderately limited (but could still function successfully) while interacting with the public, supervisors, co-workers and responding to typical work pressures or changes in work routines. Tr. 612.

As noted above, the ALJ determined that plaintiff's RFC presented no exertional limitations, but that plaintiff should avoid concentrated exposure to fumes, dusts and gases and is limited to routine, repetitive type work requiring no interaction with the general public and should be assigned to work tasks that she can complete alone and not as part of a team. That RFC is supported by substantial evidence in the record, and encompasses all of plaintiff's

11 - OPINION AND ORDER

<mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark>

limitations that are indicated by that evidence. Doctor Duvall's markings on one page of the Medical Source Statement provide no ground for creating an apparent conflict with – and then rejecting – his other thorough, extensive findings. Similarly, the VE's belief that persons who can be described as moderately limited in interacting with supervisors or coworkers will find sustaining employment "difficult" does not trump the careful, proper analysis of evidence undertaken by the ALJ. An ALJ is not bound to accept as true a VE's testimony in response to inaccurate portrayals of a plaintiff's limitations and restrictions. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ( "An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence"). It is not error to reject a VE's testimony that was based upon limitations that were more restrictive than those that the ALJ determined plaintiff had. *See Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (a VE's testimony constitutes substantial evidence when the ALJ presents the VE with a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations). The ALJ relied on the VE's response to the hypothetical question that corresponded to the RFC that was assessed for plaintiff. This is what the ALJ was required to do. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

     As noted above, this court is compelled to affirm the Commissioner's decision when its findings are supported by substantial evidence in the record as a whole. *Tackett*, 180 F.3d at 1097. A denial of benefits must be upheld even when the evidence is susceptible to more than one rational interpretation, and even when the evidence would support differing outcomes, as long as one of the interpretations supports the decision of the ALJ. *See Benton*, 331 F.3d at 1035;

*Thomas*, 278 F.3d at 954.  Although the options presented to Dr. Duvall in completing the Medical Source Statement, coupled with the broad views expressed by the VE, give rise to more than one rational interpretation of the evidence presented in this action, the decision at issue is supported by substantial evidence in the record as a whole.  Accordingly, this court is compelled to affirm that decision.

        **2.**       **Plaintiff's impairments do not meet or equal Listing 12.05**

Plaintiff also contends that the ALJ erred in failing to conclude that she met the requirements of Listings 12.05(C) and 12.05(D).  At the outset, a claimant seeking to meet the severity of the listing for mental retardation must demonstrate that his or her impairment satisfied the "diagnostic description" in the introductory paragraph of Listing 12.05, as well as one of the four sets of criteria listed in paragraphs A, B, C or D.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00, 12.05.  The diagnostic description defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  *Id*. at 12.05.

Plaintiff contends she met the criteria listed in 12.05 (C), which requires a claimant to have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00, 12.05(C).

Plaintiff also alleges she satisfied the criteria listed in 12.05(d).  Paragraph D requires a claimant to have a "valid verbal, performance, or full scale IQ of 60 through 70," resulting in at least two of the following:

\*	Marked restriction of activities of daily living; or

\*	Marked difficulties in maintaining social functioning; or

\*	Marked difficulties in maintaining concentration, persistence, or pace; or

\*	Repeated episodes of decompensation, each of extended duration.  *Id*. at 12.05(D).

This court concludes that plaintiff failed to present sufficient evidence for the first prong of establishing that she meets the requirements of Listing 12.05.  Specifically, plaintiff did not adequately show that she experienced subaverage intellectual functioning in her developmental years.  The only evidence suggesting this was presented via plaintiff's self-reporting, and her testimony was properly discredited by the ALJ.  Tr. 33-34.

Moreover, this court concludes that the ALJ properly rejected the IQ scores obtained by Dr. Richardson.  An ALJ must give specific and legitimate reasons supported by substantial evidence to reject the opinion of a treating or examining doctor.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The reasons provided by the ALJ meet this standard:  there was no objective medical evidence of brain damage, Dr. Richardson based his diagnoses on plaintiff's unreliable subjective reports, and the neuropsychological testing conducted by Dr. Duvall questioned the validity of plaintiff's performances on the intelligence testing conducted by Dr. Richardson.  Tr. 30.  Moreover, Dr. Duvall's extensive evaluations established that plaintiff has the mental capacity to work and to attend, concentrate, learn and recall work-related procedures.  Tr. 607-08.  Because plaintiff failed to satisfy the diagnostic description for mental retardation,

or the requirement of a valid IQ score of 60 though 70, or exhibit any marked limitations or episodes of decompensation, the ALJ properly concluded that she did not meet the listing for mental retardation.

## **CONCLUSION**

After careful consideration of the record and all of plaintiff's arguments advanced in this matter, this court is compelled to conclude that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. Therefore, the final decision of the Commissioner regarding plaintiff Shelly Redfearn is AFFIRMED.

IT IS SO ORDERED.

DATED this   9    day of January, 2009.

           /s/ ANCER L. HAGGERTY  
           ANCER L. HAGGERTY  
           United States District Judge